James X. Bormes (*pro hac vice*)
Catherine P. Sons (*pro hac vice*)
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

**LEAD ATTORNEY IN CHARGE FOR
PLAINTIFF AND CLASS MEMBERS**

Thomas M. Ryan (*pro hac vice*)
LAW OFFICE OF THOMAS M. RYAN, P.C.
Illinois State Bar No. 6273422
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 726-3400
tom@tomryanlaw.com
Attorney for Plaintiff

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| WHITNEY WHITMORE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>REMEDY TEMPORARY SERVICES, INC. and MCKESSON CORPORATION,<br><br>        Defendants. | Case No.: 15 cv 2161 SRB<br><br><br>**FIRST AMENDED COLLECTIVE ACTION COMPLAINT**<br><br><br>**(JURY TRIAL REQUESTED)** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff, Whitney Whitmore, individually and on behalf of all other persons similarly situated, known and unknown, through her attorneys, for her First Amended Complaint against Defendants Remedy Temporary Services, Inc. and McKesson Corporation (collectively, "Defendants"), states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1.      This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), for Defendants' failure to pay Plaintiff and other similarly situated persons all overtime pay for all time worked in excess of forty (40) hours per week.

2.      Defendants employ the telephone-based workers who are the putative class members in this lawsuit.

3.      Defendants knowingly required and/or permitted Plaintiff, who worked as a telephone-dedicated employee in the position of Customer Service Representative and other similarly situated telephone-dedicated employees to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several software programs, reading company issued emails and instructions, and completing customer service calls.

4.      In addition, Defendants were aware that Plaintiff and those similarly situated to her also performed work for Defendants on their break periods, including meal breaks, for which they were not paid.  The work that Plaintiff and similarly situated employees performed during break periods includes, but is not limited to, completing customer orders, finishing customer service calls, logging back into the phone system, re-booting their computers and initializing software programs.

5.      The amount of uncompensated time Plaintiff and those similarly situated to her spend or have spent on these required and unpaid work activities averages approximately fifteen to twenty minutes per day per person.

2

6.      Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

7.      Plaintiff brings her FLSA overtime claims as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of telephone-dedicated employees who worked for Defendants throughout the country at call centers owned by McKesson Corporation ("McKesson").

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over Plaintiff's FLSA claims in this action under 29 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9.      Venue is proper in this Court as the illegal conduct alleged herein occurred in this district.

## THE PARTIES

10.      Plaintiff Whitney Whitmore is an individual who Defendants employed from approximately April of 2015 to the present as an hourly, non-exempt Customer Service Representative who was placed to work in a call center operated by McKesson Corporation located at 4345 North Scottsdale Road in Scottsdale Arizona.  Plaintiff Whitmore resides in and is domiciled within this judicial district.

11.      Defendant McKesson is the largest pharmaceutical distributor in North America. McKesson operates telephone call centers on North Scottsdale Road and on Raintree Road in Scottsdale, Arizona and, upon information and belief, elsewhere, where telephone-dedicated hourly employees handle phone calls regarding medicines, medical supplies and health care information.  McKesson directly employs some Customer Service Representatives at its call centers.  This lawsuit does not involve those employees because, upon information and belief, McKesson' properly records and pays for all time those employees work.  This lawsuit involves Customer Services Representatives who are placed at McKesson's call centers via Remedy and its

staffing services and are not direct employees of McKesson.  McKesson may be served at 2338 W. Royal Palm Road, Suite J, Phoenix, Arizona 85021, care of Corporation Service Company, McKesson's registered agent in Arizona.

12.     Defendant Remedy Temporary Services, Inc. ("Remedy") is a for profit California corporation qualified to do business in Arizona as Remedy Temporary Services LLC.  Remedy may be served at 8655 East Via De Ventura, #G200, Scottsdale, Arizona 85258, care of Corporate Creations Network, Inc., Remedy's registered agent in Arizona.

13.     Remedy works with companies, including McKesson, that require large volume work forces.  Remedy has employees and managers who work onsite at these companies, including at McKesson's work sites where Plaintiff and the putative class members worked.  Remedy employees and managers assist and help manage a company's telephone-dedicated staffing needs and who manage recruitment, selection, training, planning, retention and management reporting of those phone-based employees.

14.     During the class period, Remedy provided McKesson with staffing and in-house services related to the human resources processes, from worker recruitment and selection to introduction, planning and management of workers, including of the Plaintiff and similarly situated employees.

15.     Remedy issued paychecks to Plaintiff and the similarly situated employees.

16.     Defendants employed Plaintiff and other similarly situated persons as "employees," as that term is defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

17.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because it has had employees engaged in commerce. 29 U.S.C. § 203(s)(1).

18.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of $500,000.

19.     At all relevant times, Defendants were an "employer" of Plaintiff and other

1    similarly situated persons, as that term is defined by Section 203(d) of the FLSA, 29 U.S.C. §

2    203(d).

3         20.    At all material times, Plaintiff and FLSA Class Members were individual

4    employees who engaged in commerce or in the production of goods for commerce as required by

5    29 USC § 206-207.

6         21.    Further, at all material times, Defendants have operated as a "single enterprise"

7    within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform

8    related activities through unified operation and common control for a common business purpose.

9    *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs.,*

10   *Inc.*, 346 F.3d 908, 914–15 (9th Cir. 2003).

11

12                              **FACTUAL ALLEGATIONS**

13   *A.    Defendants' Practice of Requiring and/or Permitting Telephone-Based Hourly*

14         *Employees to Work Before the Start of Their Scheduled Shift Time*

15        22.    McKesson operates and has operated "call centers" in Arizona and across the nation

16   where telephone-dedicated employees similar to Plaintiff handle phone calls regarding medicines,

17   medical supplies and health care information technology solutions offered by McKesson to its

18

19   customers.

20        23.    McKesson and Remedy have an agreement to share the services of Plaintiff and

21   similarly situated telephone-based employees.

22        24.    McKesson and Remedy earn revenue and profits from the services of Plaintiff and

23   other similarly situated telephone-dedicated employees.

24

25        25.    Prior to starting work on the call center floor, Plaintiff and other similarly situated

26   telephone-based employees were and are interviewed by employees and managers of McKesson

27   and Remedy.

28

5

26.     Remedy and McKesson had the power to hire and fire Plaintiff and other persons similarly situated, with McKesson having ultimate approval as to whether a person works in its call centers.

27.     For workers placed at McKesson's call centers via Remedy, both McKesson and Remedy supervised and controlled the work schedule of Plaintiff and other similarly situated persons.

28.     For workers placed at McKesson's call centers via Remedy, McKesson and Remedy jointly determined the rate of pay for Plaintiff other similarly situated persons.

29.     For Plaintiff and certain of the workers placed at McKesson's call centers via Remedy, Remedy issued paychecks unless and until the workers became direct employees of McKesson, and both Defendants were involved in determining the actual amount of compensation paid by the paycheck.

30.     At the McKesson call center where Plaintiff Whitmore worked, Remedy and McKesson had managers on the floor of the call center during the workday, managing the work activities of the Plaintiff and other similarly situated persons.

31.     McKesson and Remedy jointly and collectively monitored, controlled and directed the work activities of Plaintiff and other similarly situated persons, including the unpaid work at issue.

32.     Defendants do not allow telephone-based employees to use McKesson's phones and computers for any personal use.  Additionally, Defendants generally prohibit and do not allow telephone-based employees to use their own personal cell phones on the call center floor.  Under Defendants' policies and practices, telephone-based employees are required to store their personal cell phones during the work day and can generally only use them on breaks and off the call center

1    floor.

2        33.    At the McKesson call center where Plaintiff worked, Remedy's and McKesson's

3    managers on the call center floor could and did regularly see with their own eyes that Plaintiff and

4

5    similarly situated telephone-based employees arrived at their work stations before the start of their

6    scheduled shift time, logged into McKesson's computers, and began working on their computers

7    prior to the start of their scheduled shift time.

8        34.    Despite seeing and knowing that Plaintiff and similarly situated telephone-based

9    employees performed work at their work stations prior to their scheduled shift time start,

10

11   Defendants and their managers on the floor of the call center did not make any effort to stop or

12   otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

13       35.    Defendants possess, control and/or have access to information and electronic data

14   that shows the times Plaintiff and similarly situated telephone-based employees logged into their

15   computers each day and the time they logged into their telephone systems.

16

17       36.    By possessing, controlling and/or accessing this information, Defendants knew that

18   Plaintiff and similarly situated telephone-based employees worked prior to the start of their

19   scheduled shift time.

20       37.    Despite having this information and knowing that Plaintiff and similarly situated

21

22   telephone-based employees logged into their computers, initialized necessary software programs,

23   and read company issued emails and instructions prior to the start of their scheduled shift time,

24   Defendants did not make any effort to stop or otherwise disallow this pre-shift work and instead

25   allowed and permitted it to happen.

26       38.    Defendants knowingly required and/or permitted Plaintiff and those similarly

27   situated to her to perform unpaid work before and after the start and end times of their shifts,

28

including but not limited to booting up computers, initializing several software programs, and reading company issued emails and instructions prior to the start of their scheduled shift time, and completing customer service calls, closing down the software programs, and logging off the system after the end of their scheduled shift times.

39.     In addition, by having managers on the call center floor and having access to the electronic data, among other things, Defendants were aware that Plaintiff and those similarly situated to her also performed work for Defendants on their break periods, for which they were not paid.  The work that Plaintiff and similarly situated employees performed during break periods includes, but is not limited to, completing customer orders, finishing customer service calls, logging back into the phone system, re-booting their computers and initializing software programs.

40.     The amount of uncompensated time Plaintiff and those similarly situated to her spend or have spent on these required and unpaid work activities averages approximately fifteen to twenty minutes per day per person.

41.     Defendants monitored and directed the work activities of Plaintiff and other similarly situated persons, including the unpaid work at issue.

**B.     *Defendants Knew of and Assented to the Pre-Shift Work***

42.     Defendants' policy and practice permits and/or requires telephone-based employees to be logged into their phones by the employee's scheduled start time.

43.     In order to be logged into McKesson's telephone systems, Defendants required and/or permitted Plaintiff and similarly situated telephone-based employees to arrive at their work station prior to their scheduled shift time and boot up computers, initialize several software programs, and read company emails and instructions.

44.     Defendants' policy and practice disciplines telephone-based employees if they are

8

not logged into their phones and ready to handle calls by the start of their scheduled shift time.

45.     This policy and practice of Defendants results in telephone-based employees, including the Plaintiff, to boot up their computers, initialize several software programs and/or read company emails and instructions prior to their start of their scheduled shift time.

46.     As set forth herein, via their policies and practices and through their own telephone and computer systems, Defendants knew and were aware that the telephone-based employees performed work prior to the start of their scheduled shift.

47.     Defendants did not instruct Plaintiff and similarly situated telephone-based employees to not log into their computers or telephones, or to not read company emails prior to the start of their scheduled shift time.  Rather, Defendants required, permitted and/or allowed Plaintiff and the putative class members to work prior to their scheduled shift time.

48.     By knowing of, permitting and/or requiring Plaintiff and similarly situated telephone-based employees to log into their computers, initialize their various software programs and/or read company email and instructions prior to the start of their scheduled shift time, Defendants assented to them performing this work.

C.      ***Defendants' Failure to Pay Overtime Wages to Their Telephone-Based Hourly Employees***

49.     Defendants determined the rate of pay for Plaintiff other similarly situated persons.

50.     McKesson's and Remedy's managers reviewed daily work times prior to McKesson and Remedy approving paychecks before they were issued.

51.     Defendants supervised and controlled the work schedule of Plaintiff and other similarly situated persons by setting the work schedules of those persons and requiring them to be at their work stations and ready to handle calls at the start of their scheduled shift time.

1

2

52.     Both Defendants determined the actual amount of compensation paid by the paycheck.

3

4

53.     Plaintiff and those employees similarly situated are individuals who were, or are, employed by Defendants in customer service, sales, and similar positions at McKesson's call centers who were not paid for some or all of their work activities prior to the beginning of their shifts, during meal and rest breaks, or after the end of their shifts.

5

6

7

8

9

54.     When Plaintiff and similarly situated telephone-dedicated employees are at work at McKesson's call centers, there is no way to tell the difference between direct hires of McKesson and other telephone-dedicated workers who are placed at the call center through Remedy.

10

11

12

13

55.     Plaintiff and the other employees are similarly situated to one another because their duties consisted primarily of providing services related to handling phone calls regarding medicines, medical supplies and health care information technology solutions offered by McKesson to its customers while working in McKesson's call centers.  Plaintiff and others similarly situated all shared similar policies, job titles, job descriptions, training, job duties and compensation, among other things.

14

15

16

17

18

19

20

21

56.     Plaintiff and the other employees are also similar because Defendants did not pay them for all time they actually worked.  Defendants knowingly required Plaintiff and the similarly situated individuals to perform unpaid work before and after their scheduled shifts, including but not limited to booting-up computers, initializing several software programs, reading company emails and instructions, and completing customer service calls.  Additionally, Defendants were aware that Plaintiff and those similarly situated to her also performed work for Defendants on their break periods, for which they were not paid.

22

23

24

25

26

27

28

57.     The net effect of Defendants' policies and practices, instituted and approved by company managers, is that Defendants willfully failed to pay regular and overtime compensation to Plaintiff and others similarly situated, and willfully failed to keep accurate time records to save payroll costs.  Defendants thus enjoyed ill-gained profits at the expense of their hourly employees.

58.     Plaintiff and others similarly situated at times work or worked in excess of forty hours per week for Defendants in a given workweek.

59.     Defendants' policy and practice of requiring and/or permitting their employees, including Plaintiff and other non-exempt, hourly employees, to perform work without pay for such work performed, violates Section 6 of the FLSA, 29 U.S.C. § 206.

60.     Defendants' policy and practice of requiring their employees to perform work without pay in many instances has caused and continues to cause Plaintiff and certain other similarly situated hourly employees to work in excess of forty hours per week, without being properly compensated at a wage of 1.5 times their respective hourly rate for such work performed, as required by Section 7 of the FLSA, 29 U.S.C. § 207.

61.     Defendants' failure to compensate their non-exempt, hourly call center employees with the full amount of the applicable regular wage or overtime wage has caused Plaintiff and other similarly situated non-exempt call center employees to suffer harm.

62.     Defendants' non-exempt, call center hourly employees are entitled to compensation for all time they worked without pay in any given workweek.

**COLLECTIVE ACTION ALLEGATIONS**

63.     Plaintiff brings Count I of this Complaint as a collective action on behalf of herself and all other current and former hourly employees of Defendants who Defendants required to perform the work described herein without pay at any time during the three years prior to the

commencement of the action to present at call centers owned by McKesson.

64.     Plaintiff has actual knowledge that FLSA Class Members have been denied overtime pay for hours worked over forty hours per workweek.  That is, Plaintiff worked with other telephone dedicated employees who worked at the McKesson call center.  As such, she has first-hand personal knowledge that the same pay violations occurred to other class members. Furthermore, other telephone dedicated employees at McKesson call centers have shared with her similar pay violation experiences as those described in this complaint.

65.     Other employees similarly situated to Plaintiff work or have worked at McKesson call centers, but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek.

66.     Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty.  Defendants have also denied them full compensation at the federally mandated minimum wage rate.

67.     FLSA Class Members perform or have performed the same or similar work as Plaintiff.

68.     FLSA Class Members regularly work or have worked in excess of forty hours during a workweek.

69.     FLSA Class Members are not exempt from receiving overtime pay at the federally mandated wage rate under the FLSA.

70.     As such, FLSA Class Members are similar to Plaintiff in terms of job duties, pay structure, and the denial of overtime and wages.

71.     Defendants' failure to pay the overtime compensation wage rate required by the

FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Class Members.

72.     The experiences of Plaintiff, with respect to her pay, are typical of the experiences of the FLSA Class Members.

73.     The specific job titles or precise job responsibilities of each FLSA Class Member do not prevent collective treatment.

74.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

75.     Although the exact amount of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all FLSA Class Members.

76.     As such, Plaintiff brings her FLSA overtime claim as a collective action on behalf of the class set forth in the following paragraph.

77.     Plaintiff's Counsel seek to send notice of this lawsuit to the following described persons:

> All persons who worked for Defendants as telephone dedicated employees, however titled, except those persons who were direct employees of McKesson, who were compensated, in part or in full, on an hourly basis at McKesson call centers, at any time between October 27, 2012 and the present and who did not receive the full amount of overtime wages earned and owed to them.

78.     There are questions of law or fact common to the employees described in paragraph 77.

79.     Plaintiff is similarly situated to the employees described in paragraph 77, as Plaintiff's claims are typical of the claims of those persons.

80.     Plaintiff's claims or defenses are typical of the claims or defenses of the persons described in paragraph 77.

81.     This is not a collusive or friendly action.  Plaintiff has retained counsel experienced in complex employment litigation, and Plaintiff and her counsel will fairly and adequately protect the interests of the persons described in paragraph 77.

82.     A collective action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count I.

83.     At all relevant times, Defendants employed Plaintiff and the persons described in paragraph 77.

84.     At all relevant times, Defendants paid Plaintiff and the persons described in paragraph 77 to work.

85.     At all relevant times, Defendants have been an "employer" of Plaintiff and the persons described in paragraph 77, as the term "employer" is defined by Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

86.     At all relevant times, Plaintiff and the persons described in paragraph 77 have been "employees" of Defendants as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

## COUNT I – FLSA
### (Failure to Pay Overtime Wages)

87.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 86 as paragraph 87 of this Count I.

88.     Plaintiff, individually and on behalf and the members of the class described in paragraph 77, asserts claims for unpaid overtime pursuant to the FLSA.

89.     At any and all times relevant hereto, Defendants were an "enterprise engaged in commerce" within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

90.     At any and all times relevant hereto, Defendants were an "employer" of the Plaintiff and the members of the class described in paragraph 77 within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

91.     At any and all times relevant hereto, Plaintiff and the members of the class described in paragraph 77 were "employees" of Defendants as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

92.     Plaintiff and the members of the class described in paragraph 77 were not paid for all time worked in excess of 40 hours in a week during the applicable statutory time period, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. § 207.

93.     At all times relevant hereto, Defendants' failure to pay Plaintiff and the members of the class described in paragraph 77 premium pay for all time worked over 40 hours in a week was willful in that, among other things:

      a.     Defendants knew that the FLSA required them to pay time and one-half for all time worked over 40 hours in a week;

      b.     Defendants failed to maintain true and accurate time records; and

      c.     Defendants encouraged Plaintiff and other similarly situated employees to not record all time worked.

94.     As a direct and proximate result thereof, Plaintiff and the members of the class described in paragraph 77 are due unpaid back wages and liquidated damages, pursuant to 29 U.S.C. § 216.

**DAMAGES SOUGHT**

95.     Plaintiff and the FLSA Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the federally mandated overtime wage rate.

96.     Plaintiff and the FLSA Class Members are also entitled to an amount equal to all of their unpaid wages as liquidated damages. 29 U.S.C. § 216(b).

97.     Plaintiff and FLSA Class Members are entitled to recover their attorneys' fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, demands judgment against Defendants and in favor of Plaintiff and all others similarly situated, for a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action and as follows:

A.  Conditionally certify the class described in paragraph 77, and grant Plaintiff's counsel leave to send notice of this lawsuit to the members of the class and allow them the opportunity to opt-in as party plaintiffs pursuant to Section 16 of the FLSA, 29 U.S.C. § 216;

B.  Declare and find that the Defendants committed one or more of the following acts:

   i.    Violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs; and

   ii.   Willfully violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs.

C.  Award compensatory damages, including all wages and overtime pay owed, in an amount according to proof;

D.  Award liquidated damages on all wages and overtime compensation due to Plaintiff and all persons who opt-in as party plaintiffs;

E.  Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

16

F.  Grant leave to amend to add claims under applicable state and federal laws to conform with the proofs at trial;

G.  Grant leave to add additional plaintiffs by motion or any other method approved by the Court to conform with the proofs at trial; and

H.  Grant such further relief as the Court deems just and equitable.

DATED this 22nd day of March 2016

**LAW OFFICE OF JAMES X. BORMES, P.C.**

s/ James X. Bormes
(*pro hac vice*)
James X. Bormes
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575
jxbormes@bormeslaw.com

Thomas M. Ryan
(*pro hac vice*)
LAW OFFICE OF THOMAS M. RYAN, P.C.
Illinois State Bar No. 6273422
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 726-3400
tom@tomryanlaw.com

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
Attorney for Plaintiff

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 22, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for service to the following CM/ECF registrants:

Gerald L. Maatman, Jr.
Christina M. Janice
Amelia Sanchez-Moran
Seyfarth Shaw LLP
131 South Dearborn, Suite 2400
Chicago, IL 60603


<u>/s/ Dawanyia Slayton, Paralegal</u>