**LEAD ATTORNEYS IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS**

James X. Bormes (Admitted *pro hac vice*)
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575
jxbormes@bormeslaw.com

Thomas M. Ryan (Admitted *pro hac vice*)
LAW OFFICE OF THOMAS M. RYAN, P.C.
Illinois State Bar No. 6273422
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 726-3400
Tom@tomryanlaw.com
Attorney for Plaintiff

**LOCAL COUNSEL:**
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| WHITNEY WHITMORE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>REMEDY TEMPORARY SERVICES, INC. and MCKESSON SPECIALTY ARIZONA, INC.<br><br>    Defendants. | Case No.: 15 cv 2161 SRB<br><br>**UNOPPOSED MOTION FOR ORDER GRANTING FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   PROCEDURAL AND FACTUAL HISTORY ......................................... 1

     A.    The Litigation .................................................................... 1

     B.    The Preliminarily Approved Settlement Agreement .................................... 2

     C.    The Court's Preliminary Approval Order ...................................... 3

     D.    The Claims and Settlement Administration ................................. 3

III.  THE COURT SHOULD GRANT FINAL APPROVAL AND
     ENTER JUDGMENT AND THE DISMISSAL ORDER ......................... 5

     A.    This Case Presented *Bona Fide* Disputes Over Entitled to Overtime
         Wages .............................................................................. 6

     B.    The Settlement is a Reasonable Compromise of Disputed Issues ............... 6

IV.   CONCLUSION ....................................................................................... 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barbosa v. Cargill Meat Sol. Corp.*
   297 F.R.D. 431, 446 (E.D. Cal. 2013) .......................................................... 8

Campanelli v. Hershey Co.,
   2011 WL 3583597 (N.D. Cal. 2011) ........................................................... 5

*Fontes v. Drywood Plus, Inc.,*
   2013 WL 6228652 (D. Ariz. 2013)............................................................... 5

*Lopez v. Arizona Public Service Co.,*
   2010 WL 1403873 (D. Ariz. 2010)............................................................... 5

*Lynn's Food Stores, Inc. v. U.S.,*
   679 F.2d 1350 (11th Cir. 1982) ............................................................... 5, 6

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*
   834 F.2d 677 (7th Cir. 1987) ....................................................................... 7

*Marshall v. Holdiay Magic, Inc.,*
   550 F.2d 1173 (9th Cir. 1977) ..................................................................... 7

*Newman v. Stein,*
   464 F.2d 689 (2nd Cir. 1972).......................................................................7

*Officers for Justice v. Civil Service Commission,*
   688 F.2d 615 (9th Cir. 1982) ....................................................................... 8

*Protective Committee for Indep. Stockholders of TMT Trailer v. Anderson,*
   390 U.S. 414 (1968).......................................................................................7

*West Virginia v. Chas. Pfizer & Co.,*
   314 F.Supp. 710 (S.D.N.Y. 1970) ............................................................... 6

**Statutes**

29 U.S.C. § 216(b)...........................................................................................1

Fair Labor Standards Act....................................................................*passim*

ii

**<u>MOTION</u>**

On March 29, 2017, the Court entered an Order granting preliminary approval of the Fair Labor Standards Act ("FLSA") collective action settlement.  (Doc. No. 86).  The Court's March 29, 2017 Order also conditionally certified the collective for settlement purposes only, approved the notice of settlement issued to the settlement collective, and set a final fairness hearing for June 12, 2017.

As further explained in the following Memorandum of Points and Authorities, the claims administration process proceeded in an orderly fashion and without issue.  264 settlement members submitted timely claim forms to the third party claims administrator.  The Parties accordingly move this Court for an order granting final approval of the collective action settlement.


DATED this 26th day of May, 2017.



                                        *s/ James X. Bormes*
                                        (Admitted *pro hac vice*)
                                        James X. Bormes
                                        LAW OFFICE OF JAMES X.
                                        BORMES, P.C.
                                        Illinois State Bar No. 620268
                                        8 South Michigan Avenue, Suite
                                        2600
                                        Chicago, Illinois 60603
                                        (312) 201-0575
                                        jxbormes@bormeslaw.com

                                        Thomas M. Ryan
                                        (Admitted *pro hac vice*)
                                        LAW OFFICE OF THOMAS M.
                                        RYAN, P.C.
                                        Illinois State Bar No. 6273422
                                        35 East Wacker Drive
                                        Suite 650
                                        Chicago, Illinois 60601
                                        (312) 726-3400
                                        tom@tomryanlaw.com

                                        LOCAL COUNSEL:
                                        Michelle R. Matheson #019568

1    MATHESON  &  MATHESON, P.L.C.
2    15300 North 90th Street
     Suite 550
3    Scottsdale, Arizona 85260
     (480) 889-8951
4    mmatheson@mathesonlegal.com

5    Attorneys for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff brought claims for unpaid overtime under the FLSA, 29 U.S.C. § 216(b). She brought her claims individually and on behalf of similarly situated hourly-paid workers at a call center located in Scottsdale, Arizona.

After the Court granted preliminary approval of the parties' collective action settlement, the third party claims administrator issued notice to the settlement members. The claims administration proceeded in an orderly fashion and without issue.  The parties now seek the Court's final approval of their settlement.

## II.    PROCEDURAL AND FACTUAL HISTORY

## A.    The Litigation

As set forth in Plaintiff's Unopposed Motion for Preliminary Approval, on October 27, 2016 Plaintiff filed a one-count complaint against Remedy Temporary Services, Inc. ("Remedy").  The single count involved claims for unpaid overtime under the FLSA.

Plaintiff worked at a call center in Scottsdale, Arizona.  Remedy, a staffing agency doing business as "RemX", placed Plaintiff at the Scottsdale call center operated by McKesson Specialty Arizona, Inc. ("McKesson") where she worked as a telephone-dedicated customer service representative. On behalf of McKesson, she handled phone calls regarding medicines, medical supplies and health care information.  Plaintiff claims that Defendants required and/or permitted her and other workers to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up their computers, initializing several software programs necessary for handling phone calls, reading company issued emails and instructions, and completing customer service calls.

On December 3, 2015, Remedy filed a motion to dismiss and to compel arbitration. (ECF No. 17.)  Following briefing and argument, the Court denied the motion to dismiss and to compel arbitration. (ECF No. 35.)  On March 22, 2016, Plaintiff filed her Amended

1

Complaint which named McKesson as a party and added joint employer allegations against the Defendants.  (ECF No. 38.)  On May 17, 2015, Plaintiff filed her Second Amended Complaint correcting the name of McKesson Corporation to McKesson Specialty Arizona, Inc.  (ECF No. 57.)   Defendants filed Answers and Affirmative Defenses denying Plaintiff's claims of unpaid overtime.  (ECF Nos. 54, 61.)

The Parties exchanged disclosures and Defendants responded to written discovery and produced timekeeping, payroll, and login data for Plaintiff.  Plaintiff deposed four witnesses – two employed by Remedy and two employed by McKesson.  On October 27, 2016, the Parties stipulated to a stay of discovery and proceedings in order to attempt mediation in San Francisco, California with David A. Rotman, Esq., a nationally recognized mediator who specializes in employment cases and wage and hour cases.  For the mediation, Defendants produced a sample of workforce data for Remedy workers assigned to McKesson's Scottsdale facility as telephone-dedicated employees.

On January 13, 2017, the parties conducted an all-day mediation at which they reached an agreement to resolve the overtime claims pertaining to, arising from, and associated with this lawsuit.

**B.      The Preliminarily Approved Settlement Agreement**

On March 29, 2017, the Court preliminarily approved the Parties' settlement agreement.  (ECF No. 86)  The settlement agreement provides for a maximum gross settlement amount of $350,000.00 ("GSA").  This amount comprises all payments to individuals contemplated by the Settlement Agreement, including payments for service awards, attorneys' fees and costs, interest, liquidated and/or multiple damages, all costs of litigation and settlement administration, and any other costs, damages, or payments of any kind.

After all Court-approved deductions to the GSA, including a reasonable service award, attorneys' fees, costs of litigation, and settlement administration, the remaining net settlement funds ("NSF") will be distributed to each individual who timely submitted

2

his/her Consent, Claim Form and Release ("Opt-In Plaintiff").  50% of the payment to each Opt-In Plaintiff shall constitute wages from which the employer's and employee's applicable payroll taxes shall be withheld, and 50% of the settlement payment to each Opt-In Plaintiff shall constitute liquidated damages. Defendants' contribution to payroll taxes shall be paid from the residual (unclaimed funds) of the NSF.

Each Opt-In Plaintiff who did not work a minimum of one workweek of at least 40 hours per workweek shall receive a one-time payment of approximately $15.50.  Each Opt-In Plaintiff who worked one or more workweeks of 40 hours or more per workweek, by formula, is allocated a *pro rata* share of the remaining NSF in proportion to the number of overtime workweeks each Opt-In Plaintiff worked as against the total number of overtime workweeks worked by all members of the settlement. The approximate individual settlement amounts for each of the 1,376 individuals who were eligible to participate in the settlement are listed as Exhibit A to the Settlement Agreement (ECF No. 83-1, pp. 13-43.) The individual settlement payments that were available to be claimed ranged from $15.50 to $945.50.

**C.     The Court's Preliminary Approval Order**

On March 16, 2017, Plaintiff filed her Unopposed Motion for Preliminary Approval of the Parties' Proposed Collective Action Settlement.  (ECF No. 83).  On March 29, 2017, the Court granted preliminary approval of the Parties' proposed settlement and scheduled a final fairness hearing for June 12, 2017.  (ECF No. 86).  The Court specifically found, on a preliminary basis, that the Settlement is fair, reasonable, and adequate.  (*Id*. at ¶ 4.)  In addition, the Court approved, as to form and content, the proposed Notice of Class Action Settlement ("Class Notice") and Claim Form, and directed notice to be sent to the class.  (*Id*. at ¶ 5.)

**D.     The Claims and Settlement Administration**

On April 4, 2017, the Claims Administrator received the list of the 1,376 individuals eligible to participate in the settlement.  (Ex. 1, ¶ 4.)  Upon receipt of the settlement list,

the Claims Administrator ran the last known addresses of the settlement members through the National Change of Address Database in order to update the addresses.  (*Id.*, ¶ 5.)

On April 6, 2017, the Claims Administrator mailed via United States Post Office first class mail the Court-approved materials which included the Class Notice and the Claim Form (collectively, a "Notice Packet"), to the 1,376 settlement members.  (*Id.* at ¶ 6.)   As required by the Settlement Agreement and as approved by the Court in its Preliminary Approval Order, these notice materials informed Class Members of: their right to file a Claim Form seeking their individual settlement payment; their ability to learn more detailed information by contacting Plaintiff's Counsel and/or the Claims Administrator; the consequences of not responding to the materials in the Notice Packet (*i.e.*, not receiving payment under the settlement); and their right to object to the Settlement.

The deadline to submit a claim form, objection, or request exclusion from the Settlement, was May 22, 2017.  (*Id.* at ¶ 6.)   During the opt-in period, the Claims Administrator received 293 notice packets that were returned as undeliverable due to old and/or bad addresses.  (*Id.*, ¶ 7.)   The Claims Administrator sent these 293 to a professional address search firm for skip tracing in order to attempt to find a current address for these individuals.  (*Id.*.)   189 of these 293 notice packets were returned with updated addresses following the skip trace and were then mailed again to the settlement members.  (*Id.*)   Of the one hundred eighty-nine (189) Notice Packets re-mailed to a traced address, one hundred two (102) was subsequently returned as undeliverable.  (*Id.*)   As of May 23, 2017, five (5) Notice Packets were returned as undeliverable with a forwarding address and were subsequently re-mailed to the forwarding address.  (*Id.*)

Ultimately, 264 individuals submitted timely Claim Forms seeking payment from the net settlement proceeds.  (*Id.* at ¶ 9.)   The total claimed amount of the 264 valid and timely claims is approximately $46,655.00.   No settlement member objected to the Settlement.

### III.   THE COURT SHOULD APPROVE THE SETTLEMENT AND ENTER JUDGMENT AND THE DISMISSAL ORDER

It is generally accepted by courts that settlements of opt-in collective actions under the FLSA must be supervised by the Department of Labor or reviewed by a court or other judicial officer for fairness in order to be enforceable. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Fontes v. Drywood Plus, Inc.*, 2013 WL 6228652, at *5 (D. Ariz. 2013). "A district court may approve [an FLSA] settlement agreement if it reflects a 'reasonable compromise over the issues.'" *Fontes*, 2013 WL 6228652, at *5 (quoting *Lopez v. Arizona Public Service Co.*, 2010 WL 1403873, at * 1 (D.Ariz. 2010)).

FLSA settlements must reflect "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355. Court approval is favored "to promote the policy of encouraging settlement of litigation," where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute." *Id.* at 1354.

Court approval serves as a safeguard that an FLSA settlement is not "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354. However, FLSA collective actions are not class actions, and the Rule 23 settlement review process does not apply. *Campanelli v. Hershey Co.*, 2011 WL 3583597, at *1 (N.D.Cal. 2011). That is because an FLSA settlement such as this one does not involve absent class members. Rather, Plaintiffs' Counsel has been in contact with their clients throughout the case, and the 264 participating Plaintiffs have each affirmatively agreed to the settlement. The decision to approve an FLSA settlement lies within the trial court's discretion. *Lynn's Food*, 679 F.2d at 1350.

Here, the settlement reflects a "reasonable compromise" on numerous issues, including: Plaintiff's and the participating individuals' entitlement to overtime; the appropriate method for calculating overtime, including the appropriate statute of limitations and the availability of liquidated damages; and the number of overtime hours

worked. The Settlement satisfies the *Lynn's Food* standard, and the Court should approve the settlement of the FLSA claims.

**A.    This Case Presented *Bona Fide* Disputes Over Entitlement to Overtime Wages**

The early life of this case was marked by motion practice seeking to dismiss the claim entirely and to compel the arbitration of Plaintiff's claims. In addition to this motion practice, the Parties engaged in contentious discovery practice and the depositions of four individuals employed by Defendants.  Counsel have vigorously pursued their positions and the rights of their clients through arms-length negotiations, supported by informal discovery, information exchanges, and legal and factual analysis. This case involves disputes over numerous issues that, were this case to proceed, would involve additional substantial motion practice. Plaintiff would need to support collective treatment, oppose Defendants' affirmative defenses, establish the amount of overtime worked, and justify the method of calculating damages. Plaintiff considered each of these issues in mediation and throughout the subsequent settlement discussions, and recognition of these issues led to the negotiated settlement that Plaintiffs have embraced.

**B.    The Settlement is a Reasonable Compromise of Disputed Issues**

Should this litigation continue, there are a range of possible outcomes including ones far less favorable to Plaintiff and the settlement members, including the very real prospect that they might receive nothing at all.  Indeed, significant litigation risks remain in obtaining collective action certification in this matter (as the matter was certified for settlement purposes only), proving liability, and establishing damages, and aspects of the case could be subject to ultimate rejection.  *Bona fide* disputes exist as to whether Plaintiff and the settlement members were properly compensated in accordance with the FLSA and federal wage laws, as well as the nature and extent of their potential damages.  Thus, as in any complex action, the Plaintiff generally faced uncertainties.  *See West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such

6

confidence is often misplaced.").

Determining a "reasonable" settlement amount is never simply a mathematical calculation that yields a particularized sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement…." *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972).  This case is no different in that, prior to beginning negotiations, there was a range of potential settlements that would have been reasonable.

The Settlement provides substantial monetary benefits now, without the time, difficulties, expense and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial.").  Each participating Class Member's settlement payment has been calculated pursuant to the formulas set forth in Paragraph 65 of the Settlement Agreement, and is based on the number of overtime weeks the Class Member worked during the Class Period.   Thus, the Settlement ensures that the participating Class Members will receive reasonable monetary relief.  Consequently, this factor supports a finding that the Settlement is fair, adequate, and reasonable.

Avoiding the delay and risk of protracted litigation is another reason counsel frequently recommends, and thus courts approve, settlements. *See, e.g., Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration of the litigation); *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977).  This consideration applies with full force to this case.

Further litigation would require the risk, time and expense associated with a motion for collective certification, trial, and possible appeals.  Trial of this action alone would consume several weeks and require the expenditure of hundreds of thousands of dollars in additional costs and attorney time.  As such, the costs of further litigation become considerable in terms of both time and money with uncertain results.   Under these

7

circumstances, the benefits of a guaranteed recovery today, rather than an uncertain result years in the future, are readily apparent.

The Court should approve the settlement because it reflects a compromise of disputed issues. Plaintiff's and the settlement members' ability to obtain and maintain conditional certification, their entitlement to overtime, the amount of overtime, and the proper calculation of damages are all disputed, and the settlement reflects compromise on all of these issues.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Id.* Here, the total settlement amount represents a compromise on the likelihood of establishing liability and on the amount and calculation of damages. The Court should approve the settlement because the payments to Plaintiff and the settlement members are substantial, and they represent a reasonable compromise of their FLSA claims.

## IV.    CONCLUSION

This settlement avoids expenditures of resources for all parties and the Court, and provides "significant benefit that [Plaintiff and the settlement members] would not receive if the case proceeded – certain and prompt relief." *Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). Because the settlement represents a fair and reasonable resolution of a *bona fide* dispute over wages, as opposed to employer overreaching, the Court should approve the settlement.

A proposed Order granting final approval of the FLSA collective action settlement is attached hereto as Exhibit 2.

8

1

DATED this 26th day of May, 2017.

2

                                              *s/ James X. Bormes*
3                                             (Admitted *pro hac vice*)
                                              James X. Bormes
4                                             LAW OFFICE OF JAMES X. BORMES, P.C.
                                              Illinois State Bar No. 620268
5                                             8 South Michigan Avenue, Suite 2600
                                              Chicago, Illinois 60603
6                                             (312) 201-0575
                                              jxbormes@bormeslaw.com
7

8                                             Thomas M. Ryan
                                              (Admitted *pro hac vice*)
9                                             LAW OFFICE OF THOMAS M. RYAN, P.C.
                                              Illinois State Bar No. 6273422
10                                            35 East Wacker Drive
                                              Suite 650
11                                            Chicago, Illinois 60601
                                              (312) 726-3400
12                                            tom@tomryanlaw.com

13                                            LOCAL COUNSEL:
                                              Michelle R. Matheson #019568
14                                            MATHESON & MATHESON, P.L.C.
                                              15300 North 90th Street
15                                            Suite 550
                                              Scottsdale, Arizona 85260
16                                            (480) 889-8951
                                              mmatheson@mathesonlegal.com
17

18                                            Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28
                                              9

1

**<u>CERTIFICATE OF SERVICE</u>**

2       I hereby certify that on May 26, 2017, I electronically transmitted the foregoing

3   document to all counsel of record via the Court's CM/ECF system, which will send

4   notification of such filing to the following at their e-mail addresses on file with the Court:

5

Gerald L. Maatman, Jr.

6
Christina M. Janice
Thomas Ahlering

7
SEYFARTH SHAW, LLP
131 S. Dearborn Street, Suite 2400

8
Chicago, Illinois 60603-5577
*Attorneys for Defendant Remedy*

9
*Temporary Services*

10
Thomas A. Gilson
BEUS GILBERT, PLLC

11
701 N. 44th St.
Phoenix, AZ 85008

12
*Local Counsel for Defendant Remedy*

13
*Temporary Services, Inc.*

14
Tibor Nagy, Jr.

15
Allec Hillbo
OGLETREE, DEAKINS, NASH, SMOAK &

16
STEWART, P.C.
3430 E. Sunrise Drive, Suite 220

17
Tucson, AZ 85718
*Attorneys for Defendant*

18
*McKesson Specialty Arizona, Inc.*

19

20

*/s/* James X. Bormes

21

22

23

24

25

26

27

28